**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| EDUCATIONAL CREDIT | ) | |
| MANAGEMENT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 1:19CV537 |
| TKD AUTOMOTIVE, INC. d/b/a | ) | |
| CAROLINA HYUNDAI OF HIGH | ) | |
| POINT, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Educational Credit Management Corporation's Motion for Summary Judgment [Doc. #21]. For the reasons that follow, the motion is granted in part as to liability, damages, costs, and entitlement to attorneys' fees, but is denied in part as to the amount of attorneys' fees requested and any other relief to the extent it is sought.

I.

The following facts are undisputed unless otherwise noted. Educational Credit Management Corporation ("ECMC") is a guaranty agency that participates in the Federal Family Education Loan Program ("FFELP") and is authorized to collect from defaulted borrowers through administrative orders to a borrower's employer to garnish up to fifteen percent of the borrower's disposable pay. (Am. Verified Compl. ¶¶ 7, 8; Order of Withholding from Earnings, Am. Verified Compl., Ex. B.) Roderick Jackson ("Borrower") was employed at Defendant TKD Automotive, Inc.

d/b/a Carolina Hyundai of High Point ("TKD") from January 2017 through May 2019. (Resp. to Interrog. 1, Pl.'s Mem. in Supp. of Mot. for Summ. J., Ex. 3.)

On January 2, 2007, Borrower signed a Master Promissory Note for student loans made under FFELP, and, as of July 1, 2016, he was in default on those loans. (Jason Downing Aff. ¶¶ 4-5.) In January 2017 and July 2018, ECMC unsuccessfully attempted to verify with TKD Borrower's employment by calling and speaking with "Layla" and faxing an Administrative Wage Garnishment Verification of Employment form. (Id. ¶¶ 6-8.) Brian Basham, Chief Operating Officer of Carolina Automotive Group, LLC, avers that TKD received a garnishment notice in the "summer/fall of 2017" for Borrower prompting Layla Woods, TKD's human resources and payroll representative, to contact ECMC who told her there was no information on Borrower in its file. (Brian Basham Aff. ¶¶ 3-5.)

ECMC confirmed through a search vendor on July 16, 2018 that TKD employed Borrower. (Downing Aff. ¶ 9.) The following day, on July 17, 2018, ECMC mailed Borrower a Notice Prior to Wage Withholding, notifying him that ECMC intended to order his employer to garnish his wages unless he took certain action within thirty days, including establishing a repayment agreement or requesting a hearing. (Id. ¶ 10; Am. Verified Compl., Ex. A.) Borrower did not request a hearing. (Am. Verified Compl. ¶ 15.)

Therefore, on August 21, 2018, ECMC issued an Order of Withholding From Earnings ("Withholding Order" or "Order") to TKD, which TKD received. (Downing Aff. ¶ 11; Am. Verified Compl., Ex. B at 1; Basham Aff. ¶ 6, Ex. 1; Resp. to

2

Interrog. 3.)  ECMC identified itself as the holder of a defaulted federally insured student loan owed to ECMC by Borrower whose name, address, and last four digits of his social security number were provided. (Am. Verified Compl., Ex. B at 1; Basham Aff., Ex. 1.)  Citing federal law, the Order instructed TKD to withhold fifteen percent of Borrower's disposable pay each pay period beginning on the first pay period following the receipt of the Order, informed TKD where and how to remit payment, and warned TKD that failure to comply with the Order required ECMC to sue TKD to recover any amount it failed to withhold. (Am. Verified Compl., Ex. B at 1; Basham Aff., Ex. 1.)

Prior to its receipt of the Withholding Order, TKD had received garnishment notices for individuals who were not employees and it periodically receives scam and fraudulent requests for payment of money. (Basham Aff. ¶ 4.)  Therefore, according to Basham, Woods was in contact with ECMC upon receipt of the Withholding Order and successive notices. (See generally Basham Aff.)  After TKD received the August 21, 2018 Withholding Order, Basham avers that Woods spoke with Borrower who denied owing any student loan debt and she attempted to contact ECMC to verify the claim but was told that the supervisor was busy and ECMC would call her back. (Id. ¶¶ 6-8; see also Resp. to Interrog. 4 (answering that Borrower denied the debt and Carolina Hyundai's Chief Financial Officer Steve Stafford asked Woods to verify the legitimacy of the garnishment notice).)  She did not receive a return call, (Basham Aff. ¶ 8), and TKD did not remit payment, (see Second Notice, Am. Verified Compl., Ex. C at 1; Basham Aff., Ex. 2).

On October 5, 2018, ECMC sent TKD a Second Notice, which TKD received, demanding compliance with the Withholding Order. (Am. Verified Compl., Ex. C; Downing Aff. ¶ 12; Basham Aff. ¶ 9, Ex. 2; Resp. to Interrog. 3.) Woods again spoke to Borrower who denied the debt, (Resp. to Interrog. 4), and, according to Basham, Woods attempted to contact ECMC again to no avail, (Basham Aff. ¶ 9).

However, on December 20, 2018, ECMC called TKD to speak to a payroll representative about the company's non-compliance with the garnishment order and was connected to Woods who refused to comply unless ECMC provided proof that the loans on which it was collecting were federal loans. (Downing Aff. ¶¶ 13, 14, Ex. B.) She said she had already told ECMC that she was not complying unless the company verified the nature of the loans, and she insisted on the provision of a court order. ECMC explained that it did not need a court order and that all the necessary information was in the Withholding Order. After Woods continued to refuse to comply, ECMC told her it would have to forward the matter to the legal department. (Downing Aff., Ex. B.)

Then, on January 7, 2019, ECMC sent TKD a Notice of Employer Non-Compliance, which TKD received. (Am. Verified Compl., Ex. D; Downing Aff. ¶ 15; Basham Aff. ¶ 10, Ex. 3; Resp. to Interrog. 3.) As before, according to Basham, Woods contacted ECMC. (Basham Aff. ¶ 10.) She was told ECMC could not provide her the information she requested to verify the garnishment. (Id.)

4

Still, TKD failed to comply with the Withholding Notice, so on March 26, 2019, ECMC's outside counsel sent TKD a demand for compliance, which TKD received. (Am. Verified Compl., Ex. E; Downing Aff. ¶ 16; Basham Aff. ¶ 11, Ex. 4; Resp. to Interrog. 3.) According to Basham, this prompted Woods to speak with ECMC's counsel and ask for verification that the loans were federal loans. (Basham Aff. ¶¶ 11-12.) In counsel's April 15, 2019 demand letter, which TKD received, she confirmed the Withholding Order related to three federally insured loans originated in March 2007 to help finance Borrower's educational expenses, reiterated that privacy laws limited further disclosure of information to TKD but instructed how Borrower could verify his loan information, and explained that ECMC had already provided TKD "with all documents and notice that federal law requires". (Am. Verified Compl., Ex. F; Downing Aff. ¶ 17; Basham Aff. ¶ 12, Ex. 5; Resp. to Interrog. 3.)

On April 16, 2019, Borrower contacted ECMC to initiate the rehabilitation of his loans. (Downing Aff. ¶ 18.) Accordingly, that same day, ECMC sent a Garnishment Modification Notice to TKD authorizing it to modify the amount withheld from Borrower's wages to $5.00 per month beginning with the next pay period. (Id. ¶ 19; Basham Aff. ¶ 13, Ex. 6.) The following month, ECMC began receiving three checks for $5.00 each from TKD until August 9, 2019 when ECMC sent TKD a Garnishment Suspension Notice pursuant to federal law because Borrower had reached the midpoint of his rehabilitation agreement. (Downing Aff. ¶¶ 19-20; Basham Aff. ¶¶ 14-15, Ex. 7.) On January 21, 2020, TKD was

5

released from the Withholding Order. (Basham Aff., Ex. 8.) Had TKD complied with the August 21, 2018 Withholding Order through April 30, 2019 at which time it began remitting payment, it would have remitted $6,199.39 in garnished wages to ECMC. (Downing Aff. ¶ 21, Ex. C.)

II.

Prior to receiving the first check for garnished wages, ECMC filed the instant action seeking an injunction requiring TKD to withhold wages as required and remit payment to ECMC until Borrower's defaulted student loan debt was paid in full or he no longer worked for TKD, damages, attorneys' fees and costs, punitive damages, and pre- and post-judgment interest. (See Verified Compl. [Doc. #1].) However, after TKD complied with the modification notice, ECMC amended its complaint to remove its request for an injunction. (Compare Verified Compl. with Am. Verified Compl.) It has now moved for summary judgment and seeks an award of damages in the amount TKD should have withheld from Borrower's wages during the period of non-compliance, and ECMC's attorneys' fees and costs, "and for such other relief as the Court deems appropriate." (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 12.)

A.

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,' Fed. R. Civ. P. 56(a)." Groves v. Commc'n Workers of Am., 815 F.3d 177, 181 (4th Cir. 2016).

6

The moving party bears the initial burden of establishing "the basis for its motion[] and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)[1]).  A verified complaint can be treated as "the equivalent of an . . . affidavit for summary judgment purposes." World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., Ltd., 783 F.3d 507, 516 (4th Cir. 2015).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A dispute is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. Id. at 248.  The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. Id.  The court cannot weigh the evidence, by failing to credit contradictory evidence, or make credibility determinations. Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651 (4th Cir. 2018).

B.

The Federal Family Education Loan Program was established to encourage the making of loans to finance students' education at eligible institutions by

---

[1] Rule 56(c) was amended effective December 1, 2010, but the substance of the rule did not change.

7

providing a federal program of student loan insurance, paying a portion of the interest on loans to qualified students, and guaranteeing a portion of each loan insured. 20 U.S.C. § 1071(a)(1). When a borrower defaults, a guaranty agency "may garnish the disposable pay of" the borrower "to collect the amount owed". 20 U.S.C. § 1095a(a). However, the borrower must first be provided written notice at least thirty days from the initiation of garnishment "of the nature and amount of the loan obligation to be collected", "the intention of the guaranty agency . . . to initiate proceedings to collect the debt through deductions from pay", the borrower's rights including "an opportunity to inspect and copy records relating to the debt", "an opportunity to enter into a written agreement with the guaranty agency", and "an opportunity for a hearing". 20 U.S.C. § 1095a(a)(2)-(5).

When the guaranty agency notifies the employer of the garnishment, it can provide to the employer "only such information as may be necessary for the employer to comply with the withholding order." 20 U.S.C. § 1095a(c). "At a minimum, the notice given to the employer includes the borrower's name, address, and Social Security Number, as well as instructions for withholding and information as to where the employer must send payments." 34 C.F.R. § 682.410(b)(9)(i)(S).

"[T]he amount deducted [pursuant to a withholding order] for any pay period may not exceed 15 percent of disposable pay" unless the borrower consents in writing. 20 U.S.C. § 1095a(a)(1). Disposable pay is what remains of compensation "after the deduction of health insurance premiums and any amounts

required by law to be withheld, and includes, but is not limited to, salary, bonuses, commissions, or vacation pay." 34 C.F.R. § 682.410(b)(9)(ii)(C).

The law requires an employer to pay the guaranty agency "as directed in the withholding order". 20 U.S.C. § 1095a(a)(6). The employer "shall be liable for," and the guaranty agency "may sue the employer . . . to recover, any amount that such employer fails to withhold from wages due an employee following receipt . . . of notice of the withholding order, plus attorney's fees, costs, and, in the court's discretion, punitive damages". Id.; see also 34 C.F.R. § 682.410(b)(9)(i)(P) ("The guaranty agency must sue any employer for any amount that the employer, after receipt of the withholding order . . ., fails to withhold from wages owed payable to an employee . . . ."). "The employer is required by statute to garnish the employee's wages. The only defense available is for the debtor to challenge the existence or the amount of the debt." Educ. Credit Mgmt. Corp. v. Cherish Prods., Inc., 312 F. Supp. 2d 1183, 1186 (D. Minn. 2004); see also Texas Guaranteed Student Loan Corp. v. Choice Clinical Lab, L.L.C., No. 4:18-CV-550-ALM-KPJ, 2019 WL 1769745, at *2 (E.D. Tex. Mar. 19, 2019), adopted 2019 WL 1767569 (Apr. 22, 2019) ("The language of the statute is mandatory; the only defense available is for the debtor to challenge the existence or the amount of the debt.") (citations omitted).

C.

There is no dispute that ECMC complied with the law when it notified Borrower of its intention to garnish his wages and provided TKD with the requisite

9

information in the Withholding Order; that TKD received the Withholding Order and subsequent notices and demand letters[2]; and that TKD did not comply with the Withholding Order until it remitted payment to ECMC in May 2019.

Nevertheless, TKD argues there are genuine disputes of material fact that preclude summary judgment on liability. (Def.'s Resp. & Mem. in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Opp'n") at 4.) First, it contends that it acted reasonably upon receipt of the garnishment notices when, out of concern that the notices may be fraudulent, Woods attempted to verify their legitimacy by contacting ECMC. (Id. at 4-6.) TKD also proffers details about settlement offers as support for its "good-faith efforts to resolve the lawsuit." (Id. at 3-4; Basham Aff. ¶ 17.) Next, TKD argues that "a jury could conclude that [it] complied with the Plaintiff's garnishment claim" because it did remit payment after receiving confirmation from ECMC's outside counsel that the garnishment was related to three federal loans. (Id. at 6-7.)

As an initial matter, ECMC objects to Basham's "recitation of facts [in his affidavit] not within his personal knowledge" but rather within the personal knowledge of Woods, and also objects to his inclusion of hearsay statements. (Pl.'s Reply to Def.'s Resp. & Mem. in Opp'n to Pl.'s Mot. for Summ. J. ("Pl.'s Reply") at 1-4.) Rule 56(c)(4) of the Federal Rules of Civil Procedure requires that

---

[2] It is unclear to what "garnishment notice" received in the "summer/fall of 2017" Basham refers in his affidavit. Neither party mentions it again, as the operative Order is the one issued on August 21, 2018.

"[a]n affidavit . . . used to . . . oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Rule 56 also permits a party to "object that the material cited to support or dispute a fact <u>cannot</u> be presented in a form that <u>would be</u> admissible in evidence." Fed. R. Civ. P. 56(c)(2). <u>See also</u> <u>Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.</u>, 790 F.3d 532, 538-39 (4th Cir. 2015) (explaining that at summary judgment, a "court may consider materials that would themselves be admissible at trial, and the content or substance of otherwise inadmissible materials where 'the party submitting the evidence show[s] that it will be possible to put the information . . . into an admissible form'" (quoting 11 James Wm. Moore et al., Moore's Federal Practice § 56.91[2] (3d ed. 2015))). Here, for several reasons, it matters not whether certain averments in Basham's affidavit are appropriate for consideration at summary judgment.

First, there is other evidence that Woods attempted to verify that ECMC was collecting on federal loans and that her refusal to comply with the Withholding Order was because she did not receive information she believed sufficient to guarantee the Order's legitimacy – the December 2018 telephone call from ECMC to Woods and TKD's responses to interrogatories, both of which ECMC submitted in support of summary judgment. But, more important, no matter the reasonableness of Woods' actions, there is no defense to TKD's failure to comply with the lawful Withholding Order.

In a factually similar case, the court found the employer liable for failing to comply with the wage garnishment order and granted summary judgment in favor of ECMC on the issue of liability. Educ. Credit Mgmt. Corp. v. Wilson, No. 1:05-CV-41, 2005 WL 1263027 (E.D. Tenn. May 27, 2005)[3].  The employer asserted two defenses.[4]  First, the employer argued that it should not have been compelled to garnish the borrower's wages because the loan was either discharged when the borrower's institution declared bankruptcy and closed or when the borrower declared bankruptcy. Id. at *2.  The court explained that the discharge of the debt in bankruptcy "is not an issue these Defendants can properly raise in this action" because the statute "does not entitle the borrower's employer to contest whether the borrower actually owes the loans". Id. at *3.  "In fact, the text of the wage garnishment provision offers a borrower's employer no defenses to a wage garnishment order." Id.

---

[3] After this May 2005 opinion, the employer moved for reconsideration and a Magistrate Judge issued a recommendation denying the motion.  However, it was determined that after the recommendation issued, ECMC discharged the borrower's loan in October 2005 and claimed it was nevertheless entitled to attorney's fees and costs incurred in the litigation. The court explained that prior to the discharge, the borrower's loan was subject to collection and that ECMC had the legal right to garnish her wages and initiate suit again the employer to recover the money it failed to garnish.  While ECMC was no longer entitled to recover damages from the employer after it discharged the borrower's loan in October 2005, it was entitled to attorney's fees and costs incurred in maintaining the suit. See Educ. Credit Mgmt. Corp. v. Wilson, No. 1:05-CV-41, 2006 WL 4608614 (E.D. Tenn. Oct. 3, 2006).

[4] The employer did not respond to ECMC's motion for summary judgment, but the court considered its defenses and arguments raised in its answer.

12

Next, the employer argued that it refused to comply with the garnishment orders because it believed them to be false or fabricated. Id.  After receiving the orders from ECMC, the employer contacted the Tennessee Department of Labor to verify the legitimacy of the orders and was told the orders did not comply with state law because they were not entered by a court. Id.  The employer then contacted ECMC for an authentic and official wage garnishment order that complied with state law. Id.  ECMC responded that it did not need to comply with state law. Id.  "Given these communications, the Defendants believed ECMC's garnishment letters to be fabricated, and, therefore, the Defendants refused to withhold [the borrower's] wages." Id.  However the court explained, while the employer's confusion was legitimate, the garnishment orders were authentic, contained sufficient information, and complied with federal law and ECMC need not comply with state law governing garnishment orders. Id. at *3-*4. "Consequently, despite their understanding of Tennessee law, the Defendants were still required to garnish [the borrower's] wages, as ordered in ECMC's garnishment letters." Id. at *4.

In Educational Credit Management Corp. v. Cherish Products, Inc., 247 F. Supp. 2d 1132 (D. Minn. 2003), the employer was liable for failing to comply with a garnishment order despite her explanation for not doing so.  She did not comply because she mistakenly believed she did not need to do so because the borrower was in the process of consolidating her debt with the Department of Education. Id. at 1133.  The employer contacted the Department of Education about the

13

garnishment order and was told that garnishing the borrower's wages would impede her consolidation. Cherish Prods., Inc., 312 F. Supp. 2d at 1184. As it turns out, the borrower did not consolidate her loans at the time, but did so after ECMC sued the employer to compel garnishment and to recover the past-due amounts. Id. at 1184-85. After the borrower consolidated her loans and the Department of Education paid ECMC the amount due on the defaulted loans, ECMC sought only damages for the amount the employer refused to withhold from the borrower's wages. Id. at 1185. The court found the employer liable under the language of the statute and granted summary judgment in ECMC's favor as to liability for failure to withhold wages and entitlement to attorneys' fees and costs. Cherish Prods., Inc., 247 F. Supp. 2d at 1134.

Here, no matter the reasonable explanations for TKD's action, its non-compliance with the Withholding Order cannot be excused. Section 1095a(a)(6) simply offers the employer no defense for not complying with a lawful garnishment order such as the one ECMC issued to TKD on August 21, 2018.

To the extent TKD uses its settlement offers as further support of its "good-faith" actions, such evidence is not admissible for this purpose, as ECMC argues. Rule 408 of the Federal Rules of Evidence prohibits admission of "offering . . . valuable consideration in compromising or attempting to compromise a claim" "either to prove or disprove the validity or amount of a disputed claim". Fed. R. Evid. 408(a). This evidence is admissible for other purposes, though, "such as proving a witness's bias or prejudice, negating a contention of undue delay, or

14

proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). Later in its opposition brief, TKD acknowledges Rule 408 in a footnote, but fails to explain or argue how its use of the settlement offers is excepted from the Rule's prohibition. Perhaps that is because the purpose for which TKD relies on the settlement offers is, indeed, prohibited by Rule 408. Therefore, that evidence has not been considered here, and, as explained above, even if it were, it would not provide a defense to liability.

As for TKD's argument that a genuine dispute of material fact exists because a jury could find that it complied with the garnishment order after ECMC's outside counsel confirmed certain information, there is no dispute that it did just that. It submitted to ECMC three checks for $5.00 in May, June, and July 2019 until ECMC suspended the order and ultimately released TKD. As in other cases, see, e.g., supra, once TKD began complying, ECMC amended its complaint to remove its requested injunction to compel compliance, but the statute still entitles it to the amount of money not remitted prior that point. Therefore, summary judgment is granted in ECMC's favor as to TKD's liability from August 21, 2018 to April 30, 2019.

### D.

TKD does not challenge ECMC's calculation of the $6,199.39 it is owed in wages that were to have been garnished during the relevant period. TKD provided ECMC Borrower's payroll records, (Resp. to Request for Prod. of Docs. 2), from which ECMC prepared a summary chart and calculated fifteen percent of

Borrower's disposable wages beginning with the September 12, 2018 pay date through the April 30, 2019 pay date, (Downing Aff. ¶ 21, Ex. C). Therefore, ECMC is awarded $6,199.39 in compensatory damages for the amount of wages that TKD failed to garnish during the relevant period.

E.

The statute entitles ECMC to attorneys' fees and costs. See United Student Aid Funds, Inc. v. Prodanis, Inc., No. 07-214-JL, 2008 WL 2180177, at *2 (D.N.H. May 23, 2008) ("Employers that choose to ignore a withholding order are thus liable for not only the ungarnished wages, but also the guaranty agency's attorney's fees and costs in pursuing these wages."). TKD argues, though, that "[b]ased on [its] compliance with the garnishment and facts upon which a jury could deny [ECMC]'s claim . . . an award of attorney's fees is not appropriate in this matter" and that even if it were, the costs and fees are not reasonable, "particularly in light of the history of this case", including TKD's settlement offers. (Def.'s Opp'n at 7-9.)

As explained above, TKD did not comply with the Withholding Order until May 2019, and there are no facts from which a jury could find in its favor on that issue. Furthermore, for the reasons explained above, TKD's attempts at settlement are not considered for purposes of ECMC's entitlement to attorneys' fees. Therefore, the only remaining question is the reasonableness of the requested attorneys' fees.

Through February 14, 2020, ECMC incurred $27,442.50 in outside counsel fees. (Lisa P. Sumner Aff. ¶ 7.)  Although ECMC directs the Court to the opinion of one district court in 2007 that found the statute did not require attorneys' fees to be reasonable, ECMC argues that the issue need not be reached here because its requested fees are reasonable. (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 11.)  TKD, on the other hand, argues that the requested fees are not reasonable, "particularly in light of the history of this case." (Def.'s Opp'n at 9.)  Indeed, cases awarding attorneys' fees pursuant to 20 U.S.C. § 1095a(a)(6) regularly refer to the reasonableness of those fees. See, e.g., Texas Guaranteed Student Loan Corp., 2019 WL 1769745, at *3; United Student Aid Funds, Inc., 2008 WL 2180177, at *2; Wilson, 2006 WL 4608614, at *7; Cherish Prods. Inc., 312 F. Supp. 2d at 1186.

To determine if ECMC's requested fees are reasonable, a lodestar figure is calculated by multiplying the number of reasonable hours expended times a reasonable rate. Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243-44 (4th Cir. 2009) (also requiring a reduction for hours spent on unsuccessful claims and an award of a percentage of the remaining amount).  The following factors guide a court's analysis of whether the hours and rate are reasonable:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation

17

and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 243-44. "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [s]he seeks an award." Id. at 244.

Here, ECMC's counsel submitted her own affidavit in which she avers that she has been licensed to practice law since 1994, maintains a license to practice law in three states, practices primarily in the areas of commercial litigation, collections, and bankruptcy, has represented ECMC since at least 2006, and was the primary attorney on this case. (Sumner Aff. ¶¶ 1, 3.) Her law partner who has been licensed since 1993 and practices in the same areas of law also provided services to ECMC in this case. (Id. ¶ 4.) They have billed ECMC at a discounted hourly rate of $400 for attorneys and $185 for paralegals. (Id. ¶ 5.) ECMC's counsel avers that these rates are "commensurate with the hourly rates customarily charged in this geographic area by attorneys and paralegals with experience, reputation, and abilities similar to those of the individuals who provided services to ECMC in this case." (Id. ¶ 6.) She knows this because she has "frequently receive[d] and review[ed] attorney fee applications filed in bankruptcy cases in North Carolina." (Id.)

Counsel has categorized the legal work performed as reviewing the history of ECMC's communications with TKD; drafting demand letters and communicating

18

with the employer; drafting pleadings, corporate disclosure, consent for extension to answer, motion and application for entry of default and withdrawal of such motion, joint Rule 26(f) report, motion to allow joinder and substitution of Defendant, notice of intent to file summary judgment, and motion for and memorandum and affidavits in support of summary judgment; drafting discovery; reviewing defense pleadings and discovery requests and document production; communications with defense counsel; client conferences; legal research; and settlement negotiations and mediation. (Id. ¶ 7.)

As is evident, there are several glaring omissions from the record that would inform the court as to the reasonableness of the attorneys' fees requested. For example, there is no mention of the number of hours spent on this matter, by whom, or on what, making it impossible to determine whether the hours expended are reasonable. Furthermore, while counsel and ECMC's manager Jason Downing believe the fees are reasonable (Downing Aff. ¶ 22), there is no specific evidence to support counsel's statement that the rates are commensurate with the hourly rates customarily charged in this area by attorneys and paralegals with similar experience, reputation, and abilities. In sum, ECMC has not met its burden of showing that its requested fees are reasonable as a matter of law.

ECMC argues that TKD "does nothing more [to oppose ECMC's attorneys' fees request] than cite several opinions for the proposition that the Court must conduct a reasonableness analysis, then make a conclusory statement that the 'costs and fees sought by the Plaintiff in this case are not reasonable, particularly

19

in light of the history of this case, and not appropriate for determination by summary judgment.'" (Pl.'s Reply at 8.) But, the problem is that ECMC has not provided sufficient evidence in the first place to support an award of fees in the amount requested. See Baruch v. Starwood Hotels & Resorts Worldwide, Inc., 773 F. App'x 158 (4th Cir. July 10, 2019) (explaining that "'where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied,' regardless of the sufficiency of the nonmoving party's evidence") (quoting Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012)). Therefore, although ECMC is entitled to attorneys' fees, summary judgment is denied as to the amount requested.

ECMC is also entitled to costs, which counsel avers totals $778.29 for copies, court filing fees, third-party mail delivery charges, PACER Service Center fees, and the mediator's fee. (Sumner Aff. ¶ 7.) These expenses are those reasonably incurred in connection with and necessary to ECMC's pursuit of this litigation. TKD's statement that these costs are not reasonable "particularly in light of the history of this case" is unconvincing and insufficient to overcome summary judgment on the award of costs. Therefore, ECMC is awarded $778.29 in costs.

F.

Although ECMC sought punitive damages and pre- and post-judgment interest in its Amended Verified Complaint, it makes no such request in its motion for summary judgment. While it concludes its Memorandum in Support of its

20

Motion for Summary Judgment with the request for an award of damages, attorneys' fees and costs, "and for such other relief as the Court deems appropriate", ECMC has neither argued for nor presented evidence that would support an award of punitive damages, nor has it argued for the award of pre- and post-judgment interest. Therefore, to the extent ECMC seeks such additional relief, it is denied.

III.

For the reasons stated in this Memorandum Opinion, IT IS HEREBY ORDERED that Plaintiff Educational Credit Management Corporation's Motion for Summary Judgment [Doc. #21] is GRANTED IN PART AND DENIED IN PART as follows. It is granted as to liability, damages, costs, and entitlement to attorneys' fees. It is denied as to the amount of attorneys' fees requested and any other relief to the extent it is sought.

This the 11th day of September, 2020.

/s/ N. Carlton Tilley, Jr.<br>
Senior United States District Judge